Filed 4/10/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| In re CARLOS J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,  Plaintiff and Respondent,  v.  CARLOS J.,  Defendant and Appellant. | A151369  (Sonoma County Super. Ct. No. 38816-J) |


Welfare and Institutions Code section 734[1] provides that "No ward of the juvenile court shall be committed to the [Department of Juvenile Facilities (DJF)] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the [DJF]."[2] Appellant Carlos J. (appellant), born September 2001, appeals from the juvenile court's order committing him to the DJF. Because there is no specific information in the record regarding the programs at the DJF, we hold that no substantial evidence supports the juvenile court's

---

[1] All undesignated section references are to the Welfare and Institutions Code.

[2] As of July 1, 2005, the correctional agency formerly known as the Department of the Youth Authority (or California Youth Authority) became known as the "Department of Corrections and Rehabilitation, Division of Juvenile Facilities." (§ 1710, subd. (a).) References in the record and case authorities to the California Youth Authority are treated as references to the DJF. References to the Division of Juvenile Justice are also treated as references to the DJF.

1

finding of probable benefit from the commitment.  Consequently, we reverse the commitment and remand for a new disposition hearing.

## BACKGROUND

In January 2017, the Sonoma County District Attorney filed a petition under section 602, subdivision (a) (Petition), alleging that appellant committed attempted murder (Pen. Code, §§ 664/187, subd. (a)) and assault with a firearm (Pen. Code, § 245, subd. (a)(2)), with firearm and criminal street gang enhancements.  In February, the Petition was amended to add a third count for assault with a firearm (Pen. Code, § 245, subd. (a)(2)) with a criminal street gang enhancement (Pen. Code, § 186.22, subd. (b)(1)(B)).  Appellant admitted the third count and enhancement and the other counts were dismissed.

According to the probation officer's disposition report, the Petition is based on an incident that occurred on January 1, 2017.  Appellant and an older male participated in a gang-related shooting in Santa Rosa.  The 18-year-old victim was standing in the driveway of a residence when appellant and the other male passed in a car.  They parked down the street and approached.  After a verbal confrontation, appellant and the co-participant drew firearms and shot five or six times in the direction of the victim.  The victim fled toward the residence.

The police investigation identified appellant and the co-participant, and police officers interviewed appellant at his high school.  Appellant admitted to the shooting.  He said the victim had tried to " 'jump' him" about a year earlier.  He also said he had "heat for Northerners" because they had harmed his family.  The older male co-participant had driven the car and provided the firearm he used.  A belt worn by appellant and photographs on his phone indicated an association with the Sureños gang.

In April 2017, following a contested dispositional hearing, the juvenile court committed appellant to the DJF.  This appeal followed.

## DISCUSSION

Appellant contends the finding of probable benefit from a DJF commitment is not supported by substantial evidence.  We agree.

2

I.    *Legal Background*

"We review the [juvenile] court's placement decision for an abuse of discretion. [Citation.]  We review the court's findings for substantial evidence, and ' "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." ' " (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)

" ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " (*In re Calvin S.* (2016) 5 Cal.App.5th 522, 527–528.)  The general purpose of the law, which encompasses both dependency and delinquency proceedings, is described in section 202, subdivision (a), which states that "The purpose of this chapter is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public.  If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective.  If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents.  This chapter shall be liberally construed to carry out these purposes."

Section 202, subdivision (b) contains additional language specifically applicable to the placement of juveniles in delinquency proceedings: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.  This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter."  Although section 202 " 'emphasiz[es] the protection and safety of the public, and recogniz[es] punishment as a form of guidance that holds the minor accountable for his or her behavior' . . . . 'the

3

Legislature has not abandoned the traditional purpose of rehabilitation for juvenile offenders,' and '[j]uvenile proceedings continue to be primarily rehabilitative.' [Citation.] Thus, '[o]ne of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the [DJF]. [Citation.] Although the [DJF] is normally a placement of last resort, there is no absolute rule that a [DJF] commitment cannot be ordered unless less restrictive placements have been attempted.' " (*In re Calvin S.*, *supra*, 5 Cal.App.5th at p. 528.) A juvenile court may properly consider "a restrictive commitment as a means of protecting the public safety." (*In re Carl N.* (2008) 160 Cal.App.4th 423, 433.)

In order to ensure the necessity of a DJF placement, there must be evidence "supporting a determination that less restrictive alternatives are ineffective or inappropriate." (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576.) More importantly in the present case, "there must be [substantial] evidence in the record demonstrating . . . a probable benefit to the minor by a [DJF] commitment . . . ." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396; see also *In re Calvin S.*, *supra*, 5 Cal.App.5th at p. 528; *In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.) That is because section 734 provides that "No ward of the juvenile court shall be committed to the [DJF] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the [DJF]."

Evidence of probable benefit is required not only by section 734, but also by the language of section 202, subdivision (b) mandating that delinquent minors "receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (§202, subd. (b).) A similar mandate appears in rule 5.790(h) of the California Rules of Court.[3]

---

[3] All undesignated rule references are to the California Rules of Court.

4

That rule provides that, where a minor's welfare requires that he be removed from his parent's custody (§ 726, subd. (a)(3)) (as the juvenile court found in the present case), "[t]he decision regarding choice of placement must take into account . . . [t]hat the setting is the environment best suited to meet the child's special needs and best interest." (Rule 5.790(h).)

" 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. [Citations.] 'Substantial evidence . . . is not synonymous with "any" evidence.' Instead, it is ' " 'substantial' proof of the essentials which the law requires." ' " (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) "Substantial evidence is . . . not merely an appellate incantation designed to conjure up an affirmance. To the contrary, it is essential to the integrity of the judicial process . . . . 'The Court of Appeal "was not created . . . merely to echo the determinations of the trial court. A decision supported by a mere scintilla of evidence need not be affirmed on review." ' " (*Id.* at p. 652.)

The juvenile court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

II.  *Dispositional Facts, Recommendations, and Findings*

Appellant, who was 15 years old at the time of the January 2017 shooting, was raised in Santa Rosa and Mexico. He did not have a substantial record of involvement with the juvenile court system.[4]

Appellant admitted he started regularly smoking marijuana at about age 14. Appellant's most recent high school grade point average was 0.50, although he had been

---

[4] In January 2016, police encountered appellant in the company of Sureños gang members who were drinking alcohol in a car. In February 2016, appellant was referred to the probation department after his arrest for resisting a peace officer (Pen. Code, § 148, subd. (a)). In that incident, it was reported to the police that appellant and an associate were attempting to break into a residence. Appellant ran from the police. Appellant was referred to a diversion program, but he did not successfully complete the program for unspecified reasons.

5

receiving good grades at juvenile hall. He had 30 incidents of "defiance" at high school from 2013 to 2016, he had been suspended for "harassment," and he had been disciplined for fighting on four occasions. He had not been disciplined at juvenile hall.

The probation department's disposition report recommended that appellant be committed to DJF. In explaining the recommendation, the probation officer cited the gravity of the underlying offense and appellant's association with the Sureños gang. She expressed doubt appellant would be able to avoid violence in the future, pointing out that appellant said he " 'still wanted to get' " the victim a year after being threatened. The probation officer indicated that, in making her recommendation, she had considered appellant's "acceptance of responsibility for his actions, his lack of a prior record and his demonstration of appropriate behavior during his recent detainment." But the probation department concluded appellant "presents a serious risk to the safety of others. The disposition that offers the most community protection, is his removal from society and placement in a structured facility that can *offer gang intervention services*." (Italics added.)

In rejecting a less restrictive placement, the probation officer opined that, "Programming available at the local level is insufficient to meet the minor's treatment, educational, and social needs. [Appellant] is too impulsive to be monitored within the community and placement within congregate care or Probation Camp is not a viable option, given his lack of maturity, impulsivity issues and the serious nature of the offense. Additionally, [appellant's] expedited return to the community may put him at serious risk for re-offending, ultimately endangering the safety of others."

Based on a traumatic experience reported to the probation officer, appellant's counsel requested that he be evaluated by a psychologist for Post-Traumatic Stress Disorder (PTSD). According to the psychologist's report, when appellant was under the age of five, his home in Santa Rosa was invaded by Norteños gang members carrying bats and knives. Appellant and his sister hid in a bedroom while the gang members destroyed the family's property. While appellant was visiting his father in Mexico during the summer of 2016, he personally witnessed a friend's murder. Appellant and his uncle

6

were talking to the friend when a car full of masked men pulled up and then shot the friend as he ran away. The gunmen also sprayed bullets in the direction of appellant and his uncle. A few days later a second friend was killed.

The psychologist opined that appellant "reported what appears to be symptoms of Acute Trauma Reaction." She said appellant "is a highly anxious teenager prone to addressing the world in a detailed, hypervigilant manner. . . . [Appellant] likely engages in ruminative thinking much of the time, and . . . he is apt to feel both worried and stressed." The psychologist opined that appellant's judgment was limited by "developmentally normal immaturity," he had "limited impulse control," he "seems genuinely motivated to alter his behavior and affiliations," and he was amenable to treatment. She recommended he receive "on-going individual psycho-therapy in whatever setting the Court determines as most appropriate." She discouraged a DJF placement, concluding, "Given his youth and his history of trauma and active PTSD, this writer respectfully suggests that [appellant] be re-evaluated for a possible commitment [to] the Probation Camp, or for a placement program that can provide both high structure and therapy, to meet his dual needs of addressing his trauma condition and developing . . . pro-social life skills."

The probation officer filed a supplemental report that summarized the psychologist's conclusions and re-affirmed the recommendation of a DJF commitment. The report stated, "[Appellant] has proven himself to be a public safety risk and he must be contained in a state facility where his educational, therapeutic, and emotional issues can be addressed in a secured facility. After serving his term and receiving gang intervention services and other appropriate resources, he will return to the community and be supervised by Probation."

No witnesses testified at the disposition hearing. The prosecutor briefly argued for a DJF commitment based on appellant's gang association and the seriousness of the offense. Appellant's counsel argued at length that a less restrictive placement would both protect the public and be beneficial to appellant. Regarding DJF, counsel observed, "We have to consider not only the safety of the community, but [appellant's] welfare as well.

7

Despite reforms, [DJF] is still an entry to the adult prison system. It is still a program in which people come out of there much more gang-entrenched than they were when they went in. The kids that go there are forced on day one to pick a side: Are you a Southerner? Are you a Northerner?" Counsel continued, "That is exactly what we want to avoid with [appellant]. He grew up in that gang environment as a result of his family - - his extended family, not his immediate family. But also as a result of his neighborhood. . . . We need to get him away from this environment and [DJF] is not the way to do that." Counsel also observed, "There's nothing in the [probation] report to reflect that [appellant] will get the kind of counseling he needs. There's nothing in [DJF's] history to suggest he will get the kind of counseling he needs. [¶] I think it would be an enormous mistake for this Court to send him to a program designed to build a better gang member."

The juvenile court ordered appellant committed to DJF with a maximum term of confinement of seven years. The court acknowledged the psychologist's "report does reflect that [appellant] may be suffering from some [PTSD] that certainly needs to be addressed." But the court reasoned, "The concern about [appellant] is that even though he is 15, and I realize he has not a substantial prior record, but unfortunately his gang associations go back to middle school. . . . [T]he Court cannot go past the seriousness of this particular offense. Any time somebody takes out a gun and empties the gun towards another individual, not only does it provide for a danger to the intended victim, but also unintended victims, and the Court simply cannot get over the seriousness of the offense in this case of firing a weapon multiple times for the purposes of gang activities."

The juvenile court found, using the language of section 734, "that the mental and physical condition and qualifications of this youth render it probable that the youth will benefit from the reformatory, discipline or other treatment provided by the [DJF]." The court observed that it "is aware that in the past the [DJF] has not been adequate sometimes for the rehabilitation of minors; however, recent changes has limited the number of participants in the [DJF] and [the DJF] has been able to provide additional services to the youth now incarcerated."

In closing, the juvenile court told appellant, "I just simply could not get over the seriousness of this case. . . . The Court feels that the possibilities are limited as to what I can do under the circumstances and that's why I'm imposing the [DJF] commitment."

III.    *Analysis*

In arguing there was substantial evidence of probable benefit from a DJF commitment, respondent asserts, "Appellant's impulsive and gang-related shooting, troubling school and delinquency background, substance abuse, and inability to control his anger showed that he could significantly benefit from DJF's strictly-controlled environment and *intensive treatment* to address his issues." (Italics added.) However, as is apparent from the above summary of the record, there was no evidence before the juvenile court regarding any "intensive treatment" appellant might receive at the DJF. In order for a juvenile court to make the determination of probable benefit required by section 734; the determination of "appropriate" treatment in a minor's "best interest" required by section 202, subdivision (b); and the determination of whether the DJF is "best suited" to meet a minor's "special needs and best interest" required by rule 5.790(h), there must be *some* specific evidence in the record of the programs at the DJF expected to benefit a minor.

Respondent argues there *was* evidence of probable benefit in the record, because the probation officer's report recommending a DJF commitment stated that appellant should be placed "in a state facility where his educational, therapeutic, and emotional issues can be addressed in a secure facility." Respondent asserts, "The obvious inference from this statement is that DJF is that 'state facility' which provides for appellant's needs." Respondent also argues this court should "presume that the reporting probation officer executed her duties in crafting the report and recommendation, which would imply a meaningful examination of how appellant would benefit from DJF programs." (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) We agree the report can fairly be read as asserting that the DJF is the best placement to address appellant's needs and it can be presumed that assertion was based on some knowledge of the DJF. However, the law required the juvenile court, not the

9

probation department, to make the finding of probable benefit. The court could not make that finding, and this court cannot review the adequacy of the evidence supporting the finding, without evidence in the record of the programs at the DJF expected to be of benefit to appellant. The probation officer's unexplained and unsupported assertion of possible benefit is not evidence of "reasonable, credible, and of solid value" from which the juvenile court could make an informed assessment of the likelihood a DJF placement would be of benefit to appellant, in light of his specific needs. (*Roddenberry*, *supra*, 44 Cal.App.4th at p. 651.)

For example, the juvenile court acknowledged the psychologist's finding that appellant suffered from PTSD and declared, "that certainly needs to be addressed." Nevertheless, the court had no information before it regarding any mental health services at the DJF. Respondent points out that among the findings in the probation department's proposed order adopted by the juvenile court is that the DJF "is authorized to provide routine medical, dental and mental health treatment to the minor." However, that authorization is not evidence such treatment is available at the DJF, much less that any available mental health services are adequate to address appellant's PTSD. Given the consensus that appellant has serious mental health needs, the availability of appropriate treatment at the DJF was at least a necessary piece of information for the juvenile court to consider in determining probable benefit.

Perhaps the most critical issue for the juvenile court to consider in determining probable benefit to appellant was the need to weaken his affiliation with the Sureños gang. Appellant's underlying offense was very serious and comparable to offenses committed by others confined at the DJF. On the other hand, appellant was relatively young at 15 years old, did not have a substantial prior criminal record, and had been successful in juvenile hall. The probation officer's report addressed this issue by asserting, "The disposition that offers the most community protection, is [appellant's] removal from society and placement in a structured facility that can offer gang intervention services." It can be inferred from that statement, and the ultimate recommendation of a DJF commitment, that the DJF offers some sort of gang

10

intervention services. However, the report contains no information about the nature of the gang intervention services, in order to allow the juvenile court (and this court on review) to make an assessment of the appropriateness and adequacy of the programs for appellant.[5]

To be clear, we do not suggest that the juvenile court on a proper record could not make a finding of probable benefit to appellant from a DJF commitment. But the law unambiguously requires the probable benefit finding to be made on the basis of *actual evidence in the record*. We recognize that the participants in the below proceedings—the juvenile court, the probation department, and counsel for appellant and respondent—frequently participate in placement determinations and have some knowledge of the programs at the DJF and other placements. It may be reasonable in such circumstances for participants in the proceedings to speak in "shorthand" about placements and other matters. Nevertheless, judicial review *by this court*, requires some concrete evidence in the record about relevant programs at the DJF. Otherwise, this court's review for substantial evidence is an empty exercise, not meaningful appellate review of a legal proceeding resulting in commitment of a minor to the DJF. (See *Roddenberry*, *supra*, 44 Cal.App.4th at p. 652.)

We also want to be clear regarding what we believe is and is not part of the *initial* showing required to support a DJF commitment. Considering the significance of a decision to send a minor to the DJF and the statutory mandates of sections 202 and 734, it is reasonable and appropriate to expect the probation department, in its report or testimony, to identify those programs at the DJF likely to be of benefit to the minor under consideration. Where a minor has particular needs, the probation department should also

_____

[5] We note that the juvenile court observed, "recent changes [have] limited the number of participants in the [DJF] and [the DJF] has been able to provide additional services to the youth now incarcerated." Respondent does not suggest that general observation regarding undefined "additional services" is sufficient to show probable benefit from a DJF commitment. Accordingly, we need not and do not consider to what extent such comments are properly considered in undertaking a review for sufficiency of the evidence. (See *In re Calvin S.*, *supra*, 5 Cal.App.5th at p. 529 [stating that juvenile court's statement about juvenile hall "is not evidence, let alone substantial evidence"].)

11

include *brief* descriptions of the relevant programs to address those needs. It will likely be acceptable for the probation department to include substantially similar information about the DJF in most of its reports, with appropriate updates and customization based on the needs of the minor involved.

The People bear the burden of showing the appropriateness of a proposed placement, and the basic information outlined above is properly considered part of the initial burden of production on the issue and the minimum required substantial evidence of probable benefit. (Evid. Code, §§ 500, 550.) We observe that probation officers in prior cases have been able to provide at least some specific information about relevant programs expected to be of benefit to the minors involved. For example, in *In re M.S.* (2009) 174 Cal.App.4th 1241, the probation officer listed numerous specific programs at the DJF expected to be of benefit to the minor and provided additional information about the available medical services, which were of particular importance to the minor.[6] (*Id.* at pp. 1248–1251.) In *In re Pedro M.* (2000) 81 Cal.App.4th 550, 556, disapproved on another ground in *People v. Gonzales* (2013) 56 Cal.4th 353, it is unclear whether the probation officer identified the relevant DJF programs, but the officer did provide specific information about the sex offender treatment program, which was the minor's most critical need. (*Pedro M.*, at p. 556.) Similarly, in *In re Jesse McM.* (1980) 105 Cal.App.3d 187, the probation officer provided specific information about the mental health treatment then available at the DJF, which was the most critical need of the minor in that case. (*Id.* at p. 193.) We do not suggest those cases provide a perfect template for an initial showing of probable benefit, but they demonstrate that probation officers are capable of providing far more specific information than was provided in this case.

Nevertheless, the probation department is not required in its report and initial testimony to provide in-depth information about the DJF's programs or to preemptively respond to even predictable criticisms of the DJF. Under Evidence Code, section 664,

---

[6] The minor in the case did not challenge the sufficiency of the evidence of probable benefit (*In re M.S.*, *supra*, 174 Cal.App.4th at p. 1250), and it is unclear how much information the probation department provided about the other relevant DJF programs.

where the probation officer has identified programs of benefit to a minor and provided brief information about the most important programs, it may be presumed the probation officer's recommendation is based on an assessment the programs are available and appropriate. If a minor wishes to dispute the availability or efficacy of particular programs, or to suggest that other conditions at the DJF undermine the programs, the minor must present sufficient evidence to reasonably bring into question the benefit he or she will receive from the adoption of the probation department's recommendation. (See generally *Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1666-1168.)[7]

For example, appellant argues it was critical for the record to contain some specific information about the DJF's gang intervention programming in light of the risk that juveniles confined in institutions such as the DJF may become more entrenched in criminality. (See *Miller v. Alabama* (2012) 567 U.S. 460, 472, fn. 5 [citing article stating that " 'Numerous studies . . . indicate that exposure to deviant peers leads to increased deviant behavior and is a consistent predictor of juvenile delinquency.' "].) Appellant also cites to and quotes extensively from articles and reports alleging problems with the DJF's treatment programs.[8] Those sorts of materials, or testimony along similar lines, if properly presented to the juvenile court at the time of disposition, would then obligate the People to present more in-depth information about the DJF in order to show probable

---

[7] We describe a shifting burden of production of evidence because the framework is useful in capturing how the quantum of the evidence necessary to show probable benefit depends on the existence of evidence raising questions about the benefits of a DJF commitment. We recognize, however, that juvenile delinquency proceedings are unique and do not suggest that legal principles from other burden shifting contexts are directly applicable in the present context. (See, e.g., *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802 [employment discrimination]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [summary judgment]; *People v. Wheeler* (1978) 22 Cal.3d 258, 281 [race-based peremptory challenges].)

[8] Those materials were not presented to the juvenile court below and are unnecessary to this court's decision; our decision is based on the absence of evidence regarding the DJF's programs, not any conclusions about the inadequacy of the programs. Further, we need not and do not address the admissibility of such materials.

benefit.  For example, the People might respond with testimony showing improvements in the gang intervention programs or showing flaws in the analysis in the minor's evidence.  Such information would enable the juvenile court to balance the benefits of the gang intervention services against the risk that confinement at the DJF would harden the minor's gang affiliation and criminality.  The bottom-line is that, where a minor has concerns about a particular aspect of the DJF and presents evidence supporting those concerns, it may be necessary for the People to provide additional information to the juvenile court in order for the court to make a properly supported finding of probable benefit.

Finally, we note the approach described herein should help effectuate section 202, subdivision (d), which provides that "Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider the . . . best interests of the minor in all deliberations pursuant to this chapter.  Participants in the juvenile justice system shall hold themselves accountable for its results.  They shall act in conformity with a comprehensive set of objectives established to improve system performance in a vigorous and ongoing manner."  Providing the best available information about the DJF, and thereby enabling an informed and transparent discussion of the institution's strengths and weaknesses in the context of particular cases, should be of assistance in holding the juvenile justice system in general, and the DJF in particular, "accountable for its results."  (§ 202, subd. (d).)

We make no attempt in this decision to comprehensively set forth the type and quantum of information the probation department should provide, either in its initial presentation at the time of disposition or in response to any showing made by a minor raising concerns about the DJF.  As the juvenile court in the present case had no specific information before it regarding programs at the DJF, reversal and remand for a new disposition hearing is required.[9]

---

[9] We need not and do not address appellant's other alleged bases for reversal, including that the juvenile court erred in committing him to the DJF solely due to the seriousness of the underlying offense and that there was no substantial evidence supporting a finding

## DISPOSITION

The juvenile court's order committing appellant to the DJF is reversed, and the matter is remanded for a new disposition hearing.

there were no appropriate less-restrictive placements.  Finally, because we reverse and remand for a new dispositional hearing, we need not address the conceded clerical error in the recording of the maximum term of confinement.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

(A151369)

Superior Court of Sonoma County, No. 38816-J, Hon. Kenneth J. Gnoss, Judge.

Violet Elizabeth Grayson, under appointment by the Court of Appeal.

Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share and Huy T. Luong, Deputy Attorneys General, for Plaintiff and Respondent.