Filed 11/9/20  P. v. G.H. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>G.H.,<br><br>    Defendant and Appellant. | 2d Crim. No. B302968<br>(Super. Ct. No. PJ52251)<br>(Los Angeles County) |

Minor G.H. appeals a disposition order committing him to the Division of Juvenile Justice (DJJ) for a maximum period of confinement of six years.  (Welf. & Inst. Code, §§ 602, 731, subd. (a)(4), 734.)[1]

This appeal concerns G.H.'s nearly three-year history with the juvenile justice system.  The juvenile court declared him to be a ward of the court at age 14, after he admitted to second degree robbery and assault by means of force likely to cause great bodily

_____

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

injury. (§ 602; Pen. Code, §§ 211, 245, subd. (a)(4).) The court placed G.H. in a juvenile camp and ordered conditions of probation. Thereafter, G.H. violated probation by committing simple battery and was placed in a long-term camp. More probation violations followed, and the court placed G.H. in the community detention program (CDP). G.H. again violated the terms of probation by, among other things, possessing a loaded firearm with 380 rounds of ammunition, associating with criminal street gang members, and posting a video depicting him and other gang members threatening to kill rivals. The court returned G.H. to camp, where he engaged in altercations with other gang members. As a result, the prosecutor and the probation officer recommended that the court commit G.H. to DJJ.

G.H. challenges the juvenile court's order of commitment, claiming that insufficient evidence exists that the commitment would be of probable benefit to him or that less restrictive placements would be ineffective. (§§ 202, subd. (b), 734.) We reject these contentions and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On September 28, 2017, G.H. admitted committing second-degree robbery by taking a cellular telephone from another minor, and committing assault by means of force likely to cause great bodily injury. (§ 602; Pen. Code, §§ 211, 245, subd. (a)(4).) Other charges alleged in three section 602 petitions were dismissed pursuant to a settlement agreement. The juvenile court found the admitted counts to be true, declared a maximum term of confinement of six years, and ordered G.H. placed in the Dorothy Kirby juvenile camp. The court also ordered conditions of probation.

2

While at juvenile camp, G.H., an admitted member of the "Project Boys" criminal street gang, struck a member of a rival gang. On February 23, 2018, G.H. admitted that he committed simple battery. The juvenile court found that G.H. had violated the terms of his probation, and placed him in a long-term camp, Camp Scobee, for five to seven months. The probation officer's report stated that G.H. requires "an intense level of structure, boundaries, and supervision."

In August 2018, G.H. was released from camp and returned home with probation conditions. Two months later, he admitted violating his probation terms by not attending school and leaving home without permission. The juvenile court found the allegations true and placed G.H. on CDP for 30 days. G.H. continued to leave home without permission and violate his curfew, however, and again violated his probation terms. Pursuant to a settlement, the court released him to his parent to remain on CDP.

On March 21, 2019, G.H. admitted violating the terms of probation by possessing a loaded firearm with 380 rounds of ammunition. He also posted a live video with fellow gang members, holding a firearm, and threatening to kill rivals. The juvenile court then returned G.H. to camp for seven to nine months.

While at Campus Kilpatrick, G.H. engaged in gang altercations. He was removed from camp and placed in juvenile hall. Based upon G.H.'s admissions, the juvenile court found that the gang altercation allegations were true.

On September 20, 2019, the prosecutor filed a motion recommending that the juvenile court commit G.H. to DJJ. The motion described the services available to G.H. and attached a

3

descriptive list of programs at DJJ, including aggression interruption training and the CounterPoint program. In addition, the motion provided information from the DJJ intake employee that G.H. would receive integrated behavior treatment to stabilize his mental health as well as substance abuse treatment strategies.

The probation officer also recommended a DJJ commitment. The probation report stated that G.H. was not motivated to engage in his current camp program and he has continued aggressive and disruptive behavior: "In the last three years, [G.H.] and his family have been provided with extensive services to help address his emotional and behavioral issues which have included psychiatric hospitalizations, wrap around services, suitable placements, Kirby Center Program, and one prior camp program. Despite these numerous interventions he has made limited progress in reducing his level of violence and he has been shown to be highly treatment resistant." The report noted that DJJ provides extensive mental health services, including psychiatric care, to address G.H.'s trauma and mental health issues as well as job training programs to prepare him for eventual employment.

On October 4 and 7, 2019, the juvenile court held a contested disposition hearing. Doctor Ronald Fairbanks, a forensic psychologist, submitted a written psychological evaluation of G.H. and also testified at the hearing. Fairbanks opined that G.H. suffers from bipolar disorder and behavioral stress resulting in his reactive aggressive behavior. Fairbanks recommended that G.H. receive treatment in a residential therapeutic placement, not DJJ.

4

Lyndon Soriano, a probation officer and assistant director of Campus Kilpatrick, testified that G.H. was gang entrenched and indifferent to therapy and behavior programs. Soriano recommended that G.H. be placed at DJJ, in part because he would be housed in a private room as opposed to a dormitory setting, would receive gang intervention services, and be closely supervised. Soriano had personally supervised G.H. at Campus Kilpatrick and concluded that he had not progressed with his treatment programs.

Following its review of the juvenile court file and written argument by the parties, the court committed G.H. to DJJ for a maximum term of confinement of six years and awarded him 730 days of predisposition credit. The court specifically found that G.H. would receive probable benefit from his commitment to DJJ.

G.H. appeals the commitment order.

*DISCUSSION*

G.H. asserts that the juvenile court abused its discretion by committing him to DJJ because there is no substantial evidence that the commitment would establish a probable benefit to him or that less restrictive alternatives would be ineffective. (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 6.) He adds that the court did not discuss the DJJ programs that would address his mental health needs. (*Id.* at p. 10 [the court's finding of probable benefit must rest upon specific evidence of specific DJJ programs].)

We review the juvenile court's commitment order for an abuse of discretion, indulging all reasonable inferences in support of the decision. (*In re N.C.* (2019) 39 Cal.App.5th 81, 85; *In re A.M.* (2019) 38 Cal.App.5th 440, 448.) In determining the sufficiency of evidence to support the commitment, we examine the evidence presented at the disposition hearing in light of the

5

purposes of the juvenile court law. (*N.C.*, at p. 85; *A.M.*, at p. 449.) Section 202, subdivision (a) provides that the general purpose of the law is "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible." Moreover, the court may "remov[e] the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public." (*Ibid.*) There is no absolute rule, however, that a DJJ commitment must be a last resort placement and cannot be ordered where necessary to protect the public. (*N.C.*, at p. 86; *A.M.*, at p. 449.)

To support the necessity of a commitment, there must be evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate. (*In re N.C.*, *supra*, 39 Cal.App.5th 81, 86.) Important here, there also must be substantial evidence in the record establishing a probable benefit to the minor by a DJJ commitment. (§ 734 ["No ward of the juvenile court shall be committed to the [DJJ] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the [DJJ]"]; *In re Carlos J.*, *supra*, 22 Cal.App.5th 1, 6.) "There is no requirement that the court find exactly how a minor will benefit from being committed to DJJ. The court is only required to find if it is probable a minor will benefit from being committed." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.)

We conclude that reasonable and credible evidence supports the juvenile court's findings of a probable benefit to G.H.

from a DJJ commitment. (*In re Jonathan T.*, *supra*, 166 Cal.App.4th 474, 484-485 [DJJ commitment upheld where minor had history of running away and aggressive behavior at juvenile hall].) For nearly three years and during less restrictive placements, G.H. engaged in gang-related behavior and altercations. This included posting a video of him with other gang members, holding a firearm and ammunition, and threatening to kill rivals. G.H. also left home without permission and removed his CDP electronic transmitter. G.H.'s probation officer and assistant camp director Soriano opined that G.H. had made no progress in reducing his aggressive behavior, was indifferent to treatment, and not motivated to change. A DJJ commitment would provide G.H. with a private room and more close supervision than camp placement.

G.H.'s probation officer recommended a DJJ commitment in part because G.H. would receive mental health treatment and job training programs. The probation report noted that G.H. had exhausted all services available to him at the county level, including his seven psychiatric hospitalizations and psychotropic medications. An earlier report indicated that G.H. required "an intense level of structure, boundaries, and supervision." Unlike the circumstances in *In re Carlos J.*, *supra*, 22 Cal.App.5th 1, 14, the evidence here was sufficiently specific to permit a finding of probable benefit. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1081, fn. 3.)

7

The judgment (order) is affirmed.
<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:



PERREN, J.



TANGEMAN, J.

Morton Rochman, Judge

Superior Court County of Los Angeles

_____

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Charles J. Sarosy, Deputy Attorneys General, for Plaintiff and Respondent.