Filed 9/15/21  In re J.A. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | H048072 (Monterey County  Super. Ct. No. 20-JV-000093) |
| THE PEOPLE,  Plaintiff and Respondent,  v.  J.A.,  Defendant and Appellant. | |

After violating the terms of juvenile probation, appellant was committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). Seeking a new disposition hearing, he argues there is insufficient evidence demonstrating (1) a probable rehabilitative benefit from the DJJ commitment, and (2) ineffective or inappropriate less restrictive alternatives to the commitment.  He also challenges the juvenile court's denial of his request to waive a $40 restitution fine balance underlying earlier disposition orders.  Finding no error, we will affirm.

## I. BACKGROUND

Appellant was declared a ward of the court and placed on juvenile probation in October 2017, after the juvenile court sustained a petition alleging felony battery with great bodily injury (Pen. Code, § 243, subd. (d)) and misdemeanor resisting arrest (Pen.

Code, § 148, subd. (a)).  The court sustained probation violations in December 2017, March 2018, and May 2018.  In May 2018 the court also found true that appellant had committed three misdemeanors—providing false information to a peace officer (Pen. Code, § 148.9, subd. (a)), battery (Pen. Code, § 242), and vandalism (Pen. Code, 594, subd. (b)(2)(a))—and appellant was committed to the Monterey County Youth Center for 365 days.  Appellant violated probation in November 2018 by failing to complete Youth Center programs and committing misdemeanor battery (Pen. Code, § 242).  He violated probation in August 2019 by using drugs and disobeying curfew while in Youth Center aftercare, and in October 2019 for further aftercare violations and by committing three sustained offenses:  unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); a felony), evading an officer (Veh. Code, § 2800.2, subd. (a); a felony), and reckless driving (Veh. Code, § 23103, subd. (b); a misdemeanor).  Appellant violated probation again in October 2019 by attacking another ward while in custody.  A felony assault charge was sustained (Pen. Code, § 245, subd. (a)(4)), and appellant was recommitted to the Youth Center for 365 days.

In January 2020, appellant violated his probation by striking another Youth Center ward.  The allegation was sustained in March 2020 after a contested hearing.  In preparing for further disposition, the juvenile court reviewed the probation officer's report which recommended a third Youth Center commitment; alternative DJJ commitment findings (requested by the juvenile court in the event it decided to commit appellant to the DJJ); a juvenile hall behavior report; letters submitted by the victim of the 2020 assault, the victim's father, and on behalf of appellant; and comments from appellant, appellant's stepfather, and counsel.[1]  The court committed appellant to a seven-year, nine-month cumulative DJJ term.  The court recognized that the probation officer

---

[1] The juvenile court also reviewed a disposition report prepared in November 2019 addressing probation violations and charges sustained in October 2019.  That report is not included in the record on appeal.

did not have "the final say" regarding the probation department's recommendation that appellant be committed a third time to the county Youth Center, noting the recommendation (made by a department director) was not supported by the probation officer's report.

The juvenile court found both appellant's best interest and society's interests would be served by a DJJ commitment. The court found appellant could participate in and would benefit from "all of the programs that were listed in the probation officer's report." In particular, the court noted that anger management "has been a consistent challenge," there was "still quite a bit of work to do" in that regard, and appellant would receive anger management counseling at the DJJ beyond what he had already received. The court also found that as a high school graduate, appellant would have college classes available to him. The court found that less restrictive alternatives had been ineffective and were therefore inappropriate. Appellant's request to strike a $40 balance remaining on restitution fines imposed in 2017 and 2018 was denied.

## II. DISCUSSION

### A. THE DJJ COMMITMENT

California law requires that wards of the juvenile court "receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (Welf. & Inst. Code, § 202, subd. (b).) Appropriate guidance may include punishment that is consistent with the rehabilitative objectives of the juvenile law. (*Ibid*.) California law also provides that a ward will not be committed to the Division of Juvenile Justice without the court being "fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the [DJJ]." (*Id*., §§ 734, 1703, subd. (c).) The rehabilitative purposes of a DJJ commitment are satisfied when there is evidence in the record demonstrating " 'a probable benefit to the minor by a [DJJ] commitment and the

3

inappropriateness or ineffectiveness of less restrictive alternatives.' " (*In re Jonathan T.* (2008) 166 Cal.App.4th 485.)

A juvenile court's commitment is reviewed for abuse of discretion, indulging in all reasonable inferences to support the judgment. (*In re Edward C.* (2014) 223 Cal.App.4th 813, 829; *In re Jonathan T.*, *supra*, 166 Cal.App.4th at p. 485.) "A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) We examine the record presented at the disposition hearing in light of the purposes of the juvenile court law to determine whether the commitment has evidentiary support. (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.) " 'A [DJJ] commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' " *(In re Edward C.*, at p. 829.)

Appellant argues the matter should be remanded for a new disposition hearing because "[t]here is no evidence in the record concerning the programs, particularly the gang intervention programs, at the DJJ, how any of them would benefit him, and whether he would be eligible to participate in any of them." We see no abuse of discretion on this record. The probation officer's report and supplemental memorandum, upon which the matter was submitted,[2] were considered by the juvenile court, and they demonstrate a probable benefit to appellant from DJJ programs available to him. The probation officer met with DJJ staff before preparing his report. The report stated that appellant would be classified as a DJJ Category 5 offender, DJJ jurisdiction would end at the age of 25, and appellant would be eligible for discharge after 18 months.

---

[2] When asked whether the parties had additions, corrections, or comments regarding the probation department's recommendation and supplemental findings, appellant's attorney stated, "I don't see corrections," but "I do have argument." After arguing that appellant "[has] potential," is "taking things seriously," and would like another opportunity at the Youth Center, counsel submitted on the reports.

4

The report continued: "DJJ has several programs the minor may benefit from. The minor may participate in Counter Point, a cognitive behavioral program that will help the minor address anti-social attitudes and negative peer influence, and it will also help the minor develop self-monitoring and regulation skills to improve his ability to understand the perspective of others. He may also participate in Aggression Interruption Training (AIT), a cognitive behavioral program that will help the minor with anger issues. AIT will teach the minor tools he can use to help him think about the end result in situations, choose an alternative action, and learn to make positive decisions. DJJ also has a Cognitive Behavioral Intervention Program for substance abuse that will help the minor regarding any drug or alcohol use." The supplemental memorandum, prepared after a second consultation with DJJ staff, identified the same behavioral programs, and further explained that the DJJ does not offer a specific gang intervention program, but gangs are addressed in those programs. The supplemental memorandum also reported that appellant may enroll in community college courses while at the DJJ.

*In re Carlos J*. (2018) 22 Cal.App.5th 1, cited by appellant, does not require additional evidentiary support for a DJJ commitment. The probation officer's disposition report in *Carlos J*. concluded that the 15-year-old minor (who had participated in a gang related shooting) presented a serious risk to others; the disposition most protective of the community was "placement in a structured facility that can *offer gang intervention services*"; placement in a state facility was needed to address the minor's "educational, therapeutic, and emotional issues"; and the minor would return to the community upon "serving his term and receiving gang intervention services." (*Id*. at pp. 7–9, italics in original.) A psychologist discouraged a DJJ commitment given the minor's youth, history of trauma, and active PTSD. (*Id*. at p. 8.) The minor had grown up in a gang environment, witnessed murder, and been shot at with his uncle by masked men. (*Ibid*.) The appellate court concluded that the probation officer's "unexplained and unsupported assertion of possible benefit" were insufficient to support an informed assessment

regarding the likelihood of a commitment to the state facility benefitting the minor in light of his special needs. (*Id*. at p. 10.) That conclusion notwithstanding, the *Carlos J.* court noted that "the probation department is not required in its report and initial testimony to provide indepth [*sic*] information about [DJJ's] programs or to preemptively respond to even predictable criticisms of the [DJJ]." (*Id.* at p. 13.)

Here, the probation officer identified specific cognitive behavioral programs available to appellant, and explained how they would address his specific needs. That satisfies the prosecution's burden of showing the appropriateness of a proposed commitment. (*In re Carlos J.*, *supra*, 22 Cal.App.5th at p. 12.) Unlike the minor in *Carlos J.*, appellant had not been diagnosed with trauma or PTSD, or otherwise been assessed with special needs, and his particular need for gang intervention services was sufficiently addressed in the probation report. Appellant did not dispute the availability or efficacy of DJJ's programs, or otherwise present evidence challenging the benefit he would receive from a DJJ commitment. (*Id*. at p. 13 ["[W]here the probation officer has identified programs of benefit to a minor and provided brief information about the most important programs, it may be presumed the probation officer's recommendation is based on an assessment the programs are available and appropriate. If a minor wishes to dispute the availability or efficacy of particular programs, or to suggest that other conditions at the [DJJ] undermine the programs, the minor must present sufficient evidence to reasonably bring into question the benefit he or she will receive from the adoption of the probation department's recommendation"].)

*In re Aline R*. (1975) 14 Cal.3d 557 is also distinguishable. There the minor was committed to the DJJ because she was assaultive and no other placements were *available*. (*Id*. at pp. 560–562.) Here, the Youth Center was an available placement, but was found to be *inappropriate* given appellant's failure to respond to the services he had already received there. That finding is supported by the probation report's detailed summary and evaluation of appellant's conduct: Appellant was granted probation in October 2017,

after committing a battery with great bodily injury and resisting arrest. Thirteen days later, appellant was caught shoplifting, released to the custody of his mother, absconded from her custody, and remained at large for over four weeks. Appellant was continued on probation and ordered to serve 20 days in custody.

In March 2018, the court sustained several probation violations including marijuana use, associating with other probationers, violating curfew, not attending school, not obeying his mother, and leaving home without permission. Appellant was ordered to serve 15 days in custody and 30 days on electronic monitoring. Appellant continued to violate his curfew, miss school, and use marijuana. In June 2018, the court sustained allegations of battery, vandalism, and providing false information to a peace officer. After considering appellant's disregard for the court's authority, his escalating behavior, and the inability of appellant's mother to provide adequate supervision, appellant was committed to the Monterey County Youth Center for 365 days.

Appellant completed several rehabilitative Youth Center programs to help develop pro-social decision-making and anger management skills. At the same time, he sustained probation violations for disobeying staff directives, failing to comply with all phases/components of the Youth Center commitment, serious verbal misbehavior, fighting, and refusing to attend school. In November 2018, appellant and a companion attacked a Youth Center resident who was sleeping. A misdemeanor battery allegation was sustained, and the Youth Center commitment was extended by 90 days.

Appellant was released to Youth Center aftercare in June 2019. Two months later, he violated curfew and was taken into custody. He tested positive for and disclosed using Xanax to medical staff. He was ordered to serve 15 days in juvenile hall and the remaining 49 days of aftercare on electronic monitoring. Five weeks later, appellant cut off his ankle bracelet and absconded from his mother's care. Appellant and two others (a known gang member and a probationer) were arrested after a pursuit, and charged with unlawfully driving or taking a vehicle, evading an officer, and reckless driving. While in

custody pending resolution of those charges, appellant waged an unprovoked attack on another ward. Appellant struck the victim's head and back with his fist, and continued the attack until responding officers deployed pepper spray. Appellant was charged with assault by means likely to produce great bodily injury, and in November 2019 he was ordered to complete a second 365-day Youth Center commitment. The most recent offense, which occurred at the Youth Center in January 2020, involved appellant striking a fellow ward in the face after the ward refused to attack another ward.

The probation officer expressed concern with appellant initiating three unprovoked physical altercations, and with his unabated gang activity. Appellant associated with Norteño gang members. He was arrested with a known gang member in possession of a loaded firearm in May 2018; he was driving a stolen vehicle with a known gang member as his passenger in October 2019; and he attacked an associate of a rival gang in October 2019 while in custody. The final violation in January 2020 involved appellant and Norteño associates threatening to "jump[]" the victim unless he attacked another Youth Center resident. Appellant followed through with what he stated was "a taste of what was to come" when the victim refused. The probation officer assessed that appellant had not taken probation seriously or demonstrated a desire to change. He continued on a destructive path despite participating in the Youth Center's anger, substance abuse, and gang awareness programs. During a dispositional interview in November 2019, appellant related that he did not " 'take anything from the last [Youth Center] commitment' " and he " 'was just there to do [his] time.' " The juvenile court did not abuse its discretion by finding less restrictive alternatives to a DJJ commitment to be ineffective or inappropriate.

### B. THE RESTITUTION FUND FINE

The probation report showed a $110 restitution fine imposed in October 2017 and a $30 restitution fine imposed in June 2018. At the disposition hearing, without knowing whether a balance remained on those fines, appellant asked the court to waive the

restitution fine based on inability to pay in light of the DJJ commitment. (In a later memo, the probation officer identified $40 in outstanding restitution fines.) The court stated it was not imposing an additional restitution fund fine. To the extent there was an outstanding balance on previously imposed fines, the court denied appellant's request, noting that he could earn money while in custody.

Appellant argues the "anecdotal evidence" that he will have the opportunity to earn wages while serving a DJJ commitment is an insufficient basis upon which to deny his request to strike the $40 restitution fine balance. Appellant assumes the juvenile court had a duty to assess his ability to pay the restitution fine balance in connection with his DJJ commitment, but he provides no authority supporting that assumption. An ability to pay finding is required in delinquency cases when a restitution fund fine exceeds the $100 statutory minimum. (Welf. & Inst. Code, § 730.6, subd. (b)(1); *In re Enrique Z.* (1994) 30 Cal.App.4th 464, 469–470.) The juvenile court imposed a $110 restitution fine in 2017, but the instant appeal does not encompass the 2017 disposition order. An ability to pay finding was not required in connection with appellant's commitment, and we see no abuse of discretion in the juvenile court denying his waiver request.

## III. DISPOSITION

The order committing appellant to the Department of Corrections and Rehabilitation Division of Juvenile Justice is affirmed.

9

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H048072 - *The People v. J.A.***