Filed 11/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CALVIN S., a Person Coming Under the Juvenile Court Law. | B265382 |
| | (Los Angeles County Super. Ct. No. FJ52430) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| CALVIN S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Benjamin R. Campos, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.)  Reversed and remanded with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

After sustaining allegations that 14-year-old Calvin S. committed assault with a firearm and assault with intent to commit a sexual offense, the juvenile court declared Calvin a ward of the court pursuant to Welfare and Institutions Code section 602 and committed him to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF) for a maximum term of 15 years four months. Calvin contends that the juvenile court abused its discretion by committing him to the DJF rather than placing him in a less restrictive setting. He also argues that, pursuant to Penal Code section 654, the juvenile court should have stayed execution of the term of commitment imposed for assault with intent to commit a sexual offense, and that his attorney's failure to argue for a shorter maximum term of commitment deprived him of effective assistance of counsel. We agree that the juvenile court abused its discretion in committing Calvin to the DJF and that the court should have stayed the term of commitment for assault with intent to commit a sexual offense. Therefore, we reverse and remand for a new disposition hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Petition*

The People filed a second amended petition asking the juvenile court to declare Calvin S. a ward of the court under Welfare and Institutions Code section 602. The People alleged Calvin committed second degree robbery (Pen. Code, § 211), assault with a firearm (Pen. Code, § 245, subd. (a)(2)), assault by

means likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), forcible rape of a child under 14 years of age (Pen. Code, § 261, subd. (a)(2)), and assault with intent to commit a sexual offense (Pen. Code, § 220, subd. (a)(1)).  The People alleged in connection with the counts of second degree robbery, assault with a firearm, and forcible rape of a child under 14 years of age that Calvin personally used a firearm in committing the offense, and in connection with the counts of second degree robbery, assault with a firearm, assault by means likely to cause great bodily injury, and assault with a deadly weapon that Calvin inflicted great bodily injury on the victim.

B.     *The Jurisdiction Hearing*

At the jurisdiction hearing the juvenile court heard evidence that on September 21, 2014, at approximately 8:00 p.m., R.R. was walking down a street in Los Angeles when she saw a male, whom she later identified as Calvin, chasing her.  When Calvin caught up with R.R., he hit her on the head with a firearm, fracturing her skull and rendering her unconscious. R.R. had been wearing khaki pants, with no underwear, and when she awoke she discovered her pants had been removed. Police officers arrested Calvin in the vicinity shortly after the attack.  Swab samples from his hand, arm, and penis contained DNA matching that of R.R., but no male DNA was detected on R.R.  The criminologist who performed the DNA analysis testified it was possible the DNA from R.R. on Calvin's penis had come from Calvin's hand.

At the conclusion of the hearing, the juvenile court sustained the petition, finding that Calvin was a person

3

described by Welfare and Institutions Code section 602. The court found true the allegations that Calvin committed assault with a firearm and assault with intent to commit a sexual offense, and dismissed the other counts.

C. *The Disposition Hearing*

At the disposition hearing Calvin's mother and grandmother testified about Calvin's behavior at home and his performance in school, including that other children bullied him extensively at school because of a learning disability. An adaptive living skills instructor from Westside Regional Center, who had experience with developmentally disabled youth, testified about the services he and his organization could provide Calvin in various settings. In letters submitted to the court, Westside Regional Center stated it could provide services that would address Calvin's diagnosed developmental disability, help him transition back into the community upon release, and involve appropriate mental health professionals and others who could help Calvin with his educational and vocational needs. The letters indicated Calvin had already begun receiving these services at juvenile hall, and would continue to have access to them there, but Calvin would not have access to those services if the court placed him with the DJF.

The People asked the court to commit Calvin to the DJF because of the violence of his offenses and the need to protect him and the community. The People argued the DJF could provide Calvin with services to address his behavioral issues, including a sexual offender program. The People also argued commitment to the DJF was appropriate because it would require Calvin to register as a sexual offender.

4

Counsel for Calvin asked the court not to commit him to the DJF, but to place him in a less restrictive, local facility where he could receive services from Westside Regional Center. Counsel for Calvin conceded Calvin needed to be "locked up" so that he would not "wander the streets free," but suggested commitment to the DJF was unduly harsh, especially with its requirement that Calvin register as a sexual offender, which would make it difficult to place him in a residential home in the future. Counsel for Calvin noted Calvin had "functioned extremely well here in juvenile hall."

The juvenile court stated that, because of the violence of Calvin's offenses, the court would remove him from the home, "which would leave placement, camp, or [DJF]." The court expressed concerns with each of these options, particularly in light of Calvin's young age, the violence of his offenses, his disruptive behavior during the jurisdiction hearing, and the psychiatric evaluations reporting that Calvin had an IQ of 58 and an intellectual ability "in the extremely low range." The court invited counsel to address these concerns and propose any realistic alternative, at one point observing, "Obviously, we're struggling with this case." In response, counsel for Calvin noted Westside Regional Center had indicated it could continue to provide services to Calvin at juvenile hall, and asked the court, "Is there any reason why he cannot remain in juvenile hall?" The court responded, "We're not a treatment center. We're a detention center."

At the conclusion of the hearing, the juvenile court declared Calvin a ward of the court pursuant to Welfare and Institutions Code section 602 and committed him to the DJF for a maximum period of 14 years for the offense of assault with a firearm and

5

one year four months for the offense of assault with intent to commit a sexual offense, for a total maximum period of 15 years four months.  The court awarded Calvin 251 days of predisposition custody credit.  Calvin timely appealed.

## DISCUSSION

A.    *On This Record, the Juvenile Court Abused Its Discretion in Committing Calvin to the DJF*

Calvin contends the juvenile court erred by committing him to the DJF, rather than letting him remain in juvenile hall, where he could continue to receive services from Westside Regional Center.  He argues placement in juvenile hall would allow him to receive the rehabilitative and other services he needed, while at the same time serving the goals of protecting the public and ordering the least restrictive placement.

"'The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing a minor to [DJF].' . . . 'An appellate court 'must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.]' [Citation.]  'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.'" (*In re Jose T.* (2010) 191 Cal.App.4th 1142, 1147; see *In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154 ["'"[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence"'"].)

6

Welfare and Institutions Code section 202, which states the purpose of juvenile court proceedings, "emphasiz[es] the protection and safety of the public, and recogniz[es] punishment as a form of guidance that holds the minor accountable for his or her behavior." (*In re Christopher B.* (2007) 156 Cal.App.4th 1557, 1563.) Nevertheless, "the Legislature has not abandoned the traditional purpose of rehabilitation for juvenile offenders," and "[j]uvenile proceedings continue to be primarily rehabilitative." (*In re Julian R.* (2009) 47 Cal.4th 487, 496.) Thus, "[o]ne of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the [DJF]. [Citation.] Although the [DJF] is normally a placement of last resort, there is no absolute rule that a [DJF] commitment cannot be ordered unless less restrictive placements have been attempted. [Citations.] A [DJF] commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250; see *In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576, 579 [juvenile court abused its discretion where there was no evidence on the "crucial issue" of why less restrictive alternatives to DJF commitment would be ineffective or inappropriate].)

Acknowledging its "dual function to rehabilitate the minor and to protect the welfare and security of the community," as well as its obligation to "fashion[] the least restrictive alternative in developing a rehabilitation plan," the juvenile court in this case

tried hard to place Calvin appropriately. On this record, however, we cannot say there is substantial evidence that allowing Calvin to remain in juvenile hall "would be ineffective or inappropriate." (*In re M.S., supra,* 174 Cal.App.4th at p. 1250; see Welf. & Inst. Code, § 202, subd. (e)(4) [permissible "punishment" the juvenile court may impose includes "[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch"].) The only evidence the Attorney General cites in support of her contention that the court properly committed Calvin to the DJF is the court's statement that juvenile hall is "not a treatment center," but "a detention center." That statement, however, is not evidence, let alone substantial evidence. (See *People v. Brown* (2014) 227 Cal.App.4th 451, 467, fn. 10 [statement by the trial court is not evidence]; *People v. Sorrels* (2012) 208 Cal.App.4th 1155, 1164 ["statements by the judge are not evidence"].)

Nor is it clear what the juvenile court meant by the statement. To the extent the court was suggesting Calvin would not have access in juvenile hall to the educational, counseling, and other rehabilitative services everyone agreed he needed, the suggestion is not supported by the record. Calvin was already receiving such services in juvenile hall from Westside Regional Center, and Westside Regional Center stated it could continue to provide those services to Calvin in juvenile hall. Nothing in the record indicates otherwise.

If the juvenile court meant that commitment to juvenile hall was not an available option at disposition, the court was incorrect. Welfare and Institutions Code section 202, subdivision (b), provides that "[m]inors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall . . . receive

8

care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances," and "[t]his guidance may include punishment that is consistent with the rehabilitative objectives" of the juvenile court law. Subdivision (e)(4) of section 202 of the Welfare and Institutions Code then specifically provides that such punishment may include "[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch." (See *In re Robert M.* (2013) 215 Cal.App.4th 1178, 1184 [Welfare and Institutions Code "[s]ection 202, subdivision (e)(4), authorizes the court to commit a ward to juvenile hall"].) In addition, Welfare and Institutions Code section 727, subdivision (a)(1), provides that the juvenile court "may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of" a minor adjudged a ward of the court under section 602. (See also Welf. & Inst. Code, § 730, subd. (a) [when a minor is adjudged a ward of the court under section 602, the court may, among other options, "order any of the types of treatment referred to in Section 727"]; *In re Robert M.*, at p. 1185.)

We agree with Calvin and the Attorney General that Welfare and Institutions Code section 730, subdivision (a), did not preclude the juvenile court from committing Calvin to juvenile hall.[1] That statute provides: "When a minor is adjudged

---

[1] We requested supplemental briefing from the parties on this issue. In her supplemental letter brief, the Attorney General argued: "The juvenile court had authority to commit appellant to juvenile hall. Section 730(a), the Welfare and Institutions Code, and case law governing juvenile delinquency dispositions do not

9

a ward of the court on the ground that he or she is a person described by Section 602, the court may order any of the types of treatment referred to in Section 727, and as an additional alternative, may commit the minor to a juvenile home, ranch, camp, or forestry camp. If there is no county juvenile home, ranch, camp, or forestry camp within the county, the court may commit the minor to the county juvenile hall." Like the parties, we do not construe the second sentence of Welfare and Institutions Code section 730, subdivision (a), to implicitly preclude a commitment to juvenile hall where, as here, there may be a juvenile home, ranch, camp, or forestry camp within the county.[2] Rather, that provision merely authorizes commitment to juvenile hall when one of the listed facilities would be appropriate but is not available. (See *In re M.S.*, *supra*, 174 Cal.App.4th at p. 1250.)

We recognize that our interpretation of Welfare and Institutions Code section 730, subdivision (a), may be at odds with *In re Debra A.* (1975) 48 Cal.App.3d 327 (*Debra A.*). In that case, the court reversed a juvenile court order committing a female ward on five consecutive weekends to "the Juvenile Home, Ranch, Forestry Camp or County Juvenile Hall, as determined by the probation officer." (*Id.* at pp. 329-330.) The court in *Debra A.* held that the order impermissibly delegated to the probation officer the discretion to determine the place of detention. (*Id.* at

preclude juvenile hall commitment when placement at other facilities is available in the county."

[2] The Rancho San Antonio Boys Home was one of the facilities in Los Angeles County the juvenile court discussed at the disposition hearing.

p. 330.)  The court, citing the second sentence of Welfare and Institutions Code section 730, subdivision (a), also stated the order was "erroneous" because it included juvenile hall among the places for possible commitment even though the county had another "facility for detention of female minors."  (*Debra A.*, at p. 330.)  This statement in the court's opinion in *Debra A.* could be read to mean that the second sentence of section 730, subdivision (a), precludes commitment to juvenile hall when the county has one of the other listed facilities.

Considering the second sentence of Welfare and Institutions Code section 730, subdivision (a), in isolation, the court's statement in *Debra A.* is a plausible interpretation of the words in that sentence.  When interpreting a statute, however, we "'do not consider the statutory language "in isolation." [Citation.]'  [Citation.]  Rather, we construe the words of the statute "'in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]'  [Citation.]  In other words, we 'must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole'" [citation], so that all of the statutes in the scheme will 'have effect.'" (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614; accord, *In re S.H.* (2011) 197 Cal.App.4th 1542, 1552; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 13 ["""we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness""""]; cf. *In re Derrick B.* (2006) 39 Cal.4th 535, 543 ["[w]e found the Court of Appeal's analysis flawed, not because of the way it parsed the language of [the statute], but because it interpreted the statute in isolation"].)

Significantly, the court in *Debra A.* did not have to reconcile its interpretation of Welfare and Institutions Code section 730, subdivision (a), with the provision in Welfare and Institutions Code section 202, subdivision (e)(4), authorizing juvenile hall commitment. The Legislature enacted the latter provision nine years after *Debra A.* (see Stats. 1984, ch. 756, §§ 1-2, pp. 2726-2727), when in 1984 the Legislature repealed Welfare and Institutions Code former section 202, which had stated the purposes of the juvenile court law, and replaced it with a version of Welfare and Institutions Code section 202 containing a new statement of the purposes of the juvenile delinquency law, including, for the first time, "a definition and statement as to the use of punishment." (Legis. Counsel's Dig., Assem. Bill No. 2756 (1983-1984 Reg. Sess.) 4 Stats. 1984, Summary Dig., pp. 255-256.) Former section 202 of the Welfare and Institutions Code did not contain a provision authorizing commitment to juvenile hall. (See West's Ann. Welf. & Inst. Code (1984 ed.) § 202.)

Nor did the court in *Debra A.* attempt to harmonize its interpretation with "the broad discretion afforded to juvenile courts to make dispositional orders and impose conditions under Welfare and Institutions Code section 730" (*In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1206-1207) or a juvenile court's "great discretion in the disposition of juvenile matters" in general (*In re Greg F.* (2012) 55 Cal.4th 393, 411). Indeed, as the Supreme Court has observed: "The statutory scheme governing juvenile delinquency is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' [Citation.] Flexibility is the hallmark of juvenile court law, in both delinquency and dependency interventions. [Citation.] As noted, the juvenile court has long enjoyed great

12

discretion in the disposition of juvenile matters." (*In re Greg F.*, at p. 411; see *In re Eddie M.* (2003) 31 Cal.4th 480, 507 [juvenile proceedings are primarily rehabilitative and do not permit punishment in the form of retribution, but, "[w]ithin these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public"]; *In re James R.* (2007) 153 Cal.App.4th 413, 432 ["'[c]onsidering this statutory framework as a whole in light of its stated legislative purpose, it is clear juvenile delinquency laws are designed to provide the juvenile court maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it'"]; *In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1323 [same].)

In light of these considerations, we conclude the proper interpretation of the second sentence of Welfare and Institutions Code section 730, subdivision (a), is one that augments the juvenile court's flexibility in fashioning orders at disposition, rather than restricts it. Specifically, we do not interpret Welfare and Institutions Code section 730, subdivision (a), as implicitly precluding a commitment to juvenile hall when there is a juvenile home, ranch, camp, or forestry camp within the county. To the extent the court in *Debra A.* interpreted the statute differently, we decline to follow that decision.[3]

---

[3]    The court in *In re Gerald B.* (1980) 105 Cal.App.3d 119, citing *Debra A.*, appears to have applied without further analysis the *Debra A.* court's interpretation of Welfare and Institutions Code section 730, subdivision (a). (See *In re Gerald B.*, at p. 126.) To the extent *Gerald B.* followed *Debra A.* on this point, we decline to follow *In re Gerald B.* for the same reasons we decline to follow *Debra A.*

Finally, to the extent the juvenile court was suggesting that commitment to juvenile hall was not appropriate because of the length of Calvin's maximum period of confinement, again there was no evidence to support such a finding. There may be a valid reason, supported by admissible evidence, that placing Calvin in juvenile hall for a certain period of time would be ineffective or inappropriate. But that reason and that evidence are not in this record. Therefore, the juvenile court abused its discretion in committing Calvin to the DJF, and Calvin is entitled to a new disposition hearing.[4]

B. *The Juvenile Court Should Have Stayed the Term Imposed for Assault with Intent To Commit a Sexual Offense Under Section 654*

Calvin contends, the Attorney General concedes, and we agree that the juvenile court should have stayed the term of confinement the court imposed for assault with intent to commit a sexual offense (a term of one year four months) under section 654. "'[S]ection 654 of the Penal Code proscribes multiple punishment for a single "act or omission which is made punishable" by different statutes, i.e., a single *criminal* act or omission.'" (*In re Michael B.* (1980) 28 Cal.3d 548, 556; see § 654, subd. (a); *People v. Buchanan* (2016) 248 Cal.App.4th 603, 611.)

---

[4] Because we reverse the juvenile court's order committing Calvin to the DJF and order a new disposition hearing at which the parties can submit new evidence and make additional arguments based on the evidence, we do not reach Calvin's contention that his attorney's failure to argue for a lesser maximum period of confinement constituted ineffective assistance.

This prohibition against multiple punishment applies to a juvenile court's aggregation of periods of confinement on multiple counts. (*In re Michael B.*, at p. 556, fn. 3; see *In re R.L.* (2009) 170 Cal.App.4th 1339, 1341.)

"'[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*In re Noelle M.* (2008) 169 Cal.App.4th 193, 196; see *People v. Buchanan*, *supra*, 248 Cal.App.4th at p. 611 ["[s]ection 654 bars multiple punishment for separate offenses arising out of a single occurrence when all of the offenses were incident to one objective"].)

Calvin hit R.R. in the head with a firearm to prevent her from fleeing or resisting while he committed a sexual act upon her. There is no evidence Calvin robbed R.R. or had any other motive for hitting her in the head. Thus, the two offenses in the sustained allegations against Calvin did not arise out of separate occurrences, but arose from a single occurrence, incident to the single objective of committing a sexual act on R.R. Therefore, the juvenile court should have stayed the term of one year four months imposed for assault with intent to commit a sexual offense. (See § 654, subd. (a) ["[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment"]; *People v. Kramer* (2002) 29

15

Cal.4th 720, 722 ["[w]hen a defendant is convicted of two or more offenses for which section 654 prohibits multiple punishment, the trial court must impose sentence for one of them and stay [execution] of sentence for the others"].)

## DISPOSITION

The juvenile court's order committing Calvin to the DJF is reversed, and the matter is remanded for a new disposition hearing. The court is directed to stay execution of any term of confinement imposed on the sustained allegation of assault with intent to commit a sexual offense.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.