Filed 10/9/20  In re M.H. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.H.,<br><br>    Defendant and Appellant. | F080007<br><br>(Super. Ct. No. 19CEJ600239-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Kimberly J. Nystrom-Geist, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Before Poochigian, Acting P.J., Meehan, J. and DeSantos, J.

-ooOoo-

Minor M.H. contends on appeal the juvenile court abused its discretion when it committed him to the Department of Juvenile Justice (DJJ), because the record lacks substantial evidence of the inappropriateness or ineffectiveness of less restrictive alternatives. We affirm.

## BACKGROUND

On May 2, 2019, at approximately 5:56 p.m., Tulare County sheriff's deputies were dispatched to a market in the city of Traver for a report of a robbery in progress.[1] En route, the deputies were informed there was a possible gunshot victim and the suspect was being detained by individuals on the scene. Upon arrival, they saw minor pinned to the ground by five or six individuals. A .45-caliber semiautomatic pistol was on the ground approximately four feet away from minor, with a live round in the magazine and a spent shell stuck in the ejection port of the weapon, rendering it inoperable. An individual at the scene reported that he and five or six coworkers had been outside the market talking and exchanging money, as they recently had been paid and some owed money to others for rides to work and such. Minor approached them wearing a ski mask and armed with a gun, and demanded their wallets and money. Minor grabbed some money one of the victims had dropped. L.C. walked up and grabbed minor's wrist and a struggle ensued. L.C. took minor to the ground, but a shot was fired during the struggle and L.C. sustained a bullet wound to his thigh with an exit wound on his calf. Other victims came to L.C.'s aid and disarmed minor.

On May 6, 2019, a juvenile wardship petition was filed in Tulare County Juvenile Court pursuant to Welfare and Institutions Code section 602, alleging 17-year-old minor had committed 14 felony counts involving seven different victims of second degree

---

[1] These facts are taken from a discussion of the police report contained within the probation report.

2.

robbery (Pen. Code, § 211)[2] and assault with a firearm (§ 245, subd. (a)(2)), including special allegations for personal use of a firearm (§ 12022.53, subd. (b)), and inflicting great bodily injury on L.C. (§ 12022.7, subd. (a)).

On May 22, 2019, count 5 was amended to allege a violation of section 211 as to five of the seven victims, with a special allegation for personal use of a firearm. On the same date, minor waived his rights and admitted count 5, as amended. He also admitted count 1, a violation of section 211 as to L.C., with special allegations for personal use of a firearm and inflicting great bodily injury. He additionally admitted count 2, a violation of section 211 as to a seventh victim, with a special allegation for personal use of a firearm. The remaining counts were dismissed on the motion of the prosecution. The matter was transferred to the Fresno County Juvenile Court for disposition. The disposition hearing was continued several times at the request of minor's counsel.

In the intervening period, the probation officer filed a probation report noting that minor had serious academic and attendance issues, self-reported being highly addicted to cocaine and alcohol, admitted to gang membership and willingness to do anything for the gang, had significant gang tattoos, and had disciplinary problems at home. Minor expressed remorse for his actions and reported he robbed the victims to support his cocaine habit and because he owed others money. The probation officer recommended commitment to the DJJ, stating:

> "In making an appropriate recommendation for the minor, your officer
> considered the instant offense and the minor's age. Your officer feels the
> minor needs to be placed in a structured environment to ensure he receives
> services. Your officer considered a commitment to the New Horizon's
> Program but the minor does not meet the criteria because of the use of a
> firearm. A commitment to the Substance Abuse Unit (SAU) program was
> also deliberated but your officer believes based on the severity of the
> offense and the relatively short length of the SAU program, the minor's
> needs would not be adequately addressed. In addition, your officer believes

---

**2**      Statutory references are to the Penal Code unless otherwise noted.

the minor poses such a significant threat to public safety, that any local program offered would not be sufficient to hold the minor accountable or meet his rehabilitative needs ….'"

Defense counsel filed a statement in mitigation, requesting commitment to the New Horizons program or the SAU in light of minor's lack of prior formal record, acknowledgment of wrongdoing, and willingness to comply with court orders and local services. The prosecution's reply acknowledged these programs offered rehabilitative programming, but argued minor would be better served by a DJJ commitment given his age, the gravity of his offenses, and his history of delinquency despite a lack of prior formal proceedings.

A disposition hearing was held on September 16, 2019. The probation officer noted that, although minor was before the court on his first petition, the petition involved serious offenses that were committed to support minor's cocaine habit and because he owed money to others. Additionally, minor had a significant number of gang tattoos and expressed he would do anything for the gang. The probation officer opined that a commitment to the DJJ would meet minor's rehabilitative needs, whereas the SAU program would be of insufficient duration. The probation officer additionally opined that minor did not meet the criteria for New Horizons because of his use of a firearm. The People argued that minor required "significant rehabilitation," and that the New Horizons program did not provide sufficient programming of sufficient duration to meet minor's needs.[3] Minor's counsel argued that a local commitment would be sufficient to meet minor's rehabilitative needs.

The court opined that neither SAU nor New Horizons, individually, met minor's level of need. However, the court queried whether minor could be committed to the SAU and New Horizons programs consecutively, consisting of an 18 month commitment

---

**3** The People opined that the court could commit minor to New Horizons, despite the probation officer's belief that minor did not qualify for the program.

which, the court acknowledged, "is not something that we normally do." The court acknowledged "probation would not recommend [minor] for New Horizons," but the court stated its belief that it had the authority to commit minor to that program. The court continued, "[I]t does appear to the Court that the only commitment that would be in [minor's] best interest would be the Department of Juvenile Justice, as that is the only place he can get comprehensive intervention." Nonetheless, the court asked the parties for their view of the potential for consecutive local commitments.

The probation officer stated that consecutive commitments might not be possible because minor, who was 17 years and 6 months old at the time of the disposition hearing, would turn 18 during the first of either commitment, and each program required that the person be under the age of 18 at the time of commitment. The probation officer reiterated her view that a DJJ commitment was in minor's best interest. The People agreed that minor required the more intensive services available through the DJJ.

The court clarified, "So the problem with the two consecutive programs for [minor] at the age he is, if he was committed to the shorter program, substance abuse, first, he would become 18 while in the Substance Abuse Unit and then become ineligible for the New Horizons Program?" The probation officer responded affirmatively. Minor's counsel stated, "Well, if the Court today commits the minor consecutively to the 365 New Horizons followed by the 180 SAU, then he is 18 at the time of the commitment." Minor's counsel stated he was "in agreement with the Court's indicated sentence with the 18-month commit." The court clarified that, although it had been considering consecutive local commitments, the court's query did not constitute an indicated disposition.

The court ruled as follows:

"The Court agrees with the People and probation in terms of sophistication. What [minor] did was very sophisticated. At 17 he approached a group of adult men, masked, with a loaded firearm and he shot one of them. He caused significant bodily injury. I recognize that he immediately admitted

5.

and that he had expressed remorse, but that does not undo what brought [minor] to this position. I have considered the possibilities of local programs. And while defense is correct that a commitment to the Department of Juvenile Justice should come when a minor has exhausted the local systems and is considered the final treatment source available, for [minor] it is the only treatment source available. The two programs together, a local commit of 18 months, actually would not work because youth are under the age of 18 when they begin each of the programs. [Minor's] date of birth is March 1st. On March 1st he will be turning 18. He does not have—he has needs that we cannot meet locally, and his only opportunity for rehabilitation is with the Department of Juvenile Justice.

"I have considered his age, the gravity of the circumstances that brought him before the juvenile court. The prior efforts of rehabilitation were informal and this is his first formal event before the juvenile court. This was transferred in from Tulare County. This is the first set of formal charges that [minor] has faced, and yet at the age that he is, teetering on adulthood, the circumstances he brings to the Court, the level of need he brings to the Court is so great that we have, in fact, exhausted local options. There are no local options that meet his level of need and that are comprehensive enough to assist [minor] as he goes into adulthood.

"The Court finds probation's recommendation is appropriate and the Court makes the following findings and orders—"

Following a disruption in the courtroom, the court continued as follows:

"I do note on page 9 of probation's report that probation considered carefully the local options, and came to the same conclusion that the Court has, which is that the New Horizons Program is not the appropriate fit; that the Substance Abuse Unit is not the appropriate fit for [minor's] needs. And I note the extensive discussion on [minor's] gang involvement and his entrenchment indicated as probation set forth by [minor's] own admission, his multiple gang-related tattoos, saying that he was, in quotes, 'blessed' into the gang because he, in quotes, 'put in work' and he was willing to do anything. According to probation, [minor] indicated he used to be, in quotes, 'a crash dummy,' and he realized that nothing the gang did for him was free and it always came with strings attached.

"Probation also noted that [minor] seems willing to change. And I think that that is demonstrated in the conduct that his attorney has described in going to school here while he's in custody, in expressing remorse. And those attitudes and perspectives will assist [minor] in getting everything he can with his treatment.

"At this time the Court finds that [minor's] welfare requires that custody be taken from the parent. The Court and the probation officer have considered all local and less restrictive programs and forms of custody. And the Court is fully satisfied that these local programs are inappropriate dispositions and are inadequate. The Court also specifically finds that [minor] is likely to benefit from the various programs provided by the California Department of Corrections and Rehabilitation, Division of Juvenile Justice. The Court finds that this commitment is in [minor's] best interest and it is—and is his only viable option for rehabilitation."

The court noted that, the statutory maximum period of confinement was 40 years, but exercised its discretion and set the maximum period of confinement at 15 years.

## DISCUSSION

Minor contends the court should not have relied on the probation officer's representation that minor could not be committed consecutively to the SAU and New Horizons programs. Absent such representations, minor contends the evidence was insufficient to demonstrate less restrictive alternatives would be ineffective or inappropriate and, accordingly, the court abused its discretion in committing minor to the DJJ.

A DJJ commitment is not an abuse of discretion where the record demonstrates "both a probable benefit to the minor … and the inappropriateness or ineffectiveness of less restrictive alternatives." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) We will affirm if the record contains substantial evidence to support the juvenile court's findings, indulging all reasonable inferences in support of its decision. (*In re Calvin S.* (2016) 5 Cal.App.5th 522, 527–528.) " 'A [juvenile] court abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)

"[T]he court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (Welf. & Inst. Code, § 725.5.) The court is required to "consider 'the broadest range of information' in

7.

determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.) " 'Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted.' " (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080–1081; accord, *In re Ricky H.* (1981) 30 Cal.3d 176, 183 ["there is no absolute rule that a [DJJ] commitment should never be ordered unless less restrictive placements have been attempted"]; *In re Carlos J.* (2018) 22 Cal.App.5th 1, 6 ["A juvenile court may properly consider 'a restrictive commitment as a means of protecting the public safety.' "].)

"A juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit from being committed to DJJ." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.) The juvenile court is not required to expressly state on the record its reasons for rejecting less restrictive placements, but the record must contain some evidence that the court appropriately considered and rejected reasonable alternative placements. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) Lastly, we note that the primary objectives of juvenile court law include "the protection of the public as well as the rehabilitation of the minor." (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.)

Here, the juvenile court expressly stated on the record and at length its reasons for selecting the DJJ and rejecting less restrictive placements. The court noted that minor's offenses involved a level of criminal sophistication that resulted in significant bodily injury. The court additionally noted minor's extensive gang involvement. Although minor did not have prior "formal charges," the court noted that he was "teetering on adulthood" and had significant rehabilitative needs. The court found these needs could not be met by any individual local program. Ample evidence supported the juvenile court's finding that placements less restrictive than the DJJ were not appropriate to provide for minor's rehabilitation and the public's safety.

Nonetheless, minor argues the juvenile court wrongly rejected the possibility of consecutive commitments to SAU and New Horizons. When the court asked for the parties' views regarding a potential consecutive commitment to both SAU and New Horizons, the probation officer opined that consecutive commitments were insufficient to meet minor's needs, and indeed were not possible due to minor's age. Minor now suggests the court should not have relied on the probation officer's representation in this regard, because the probation officer also incorrectly opined minor was ineligible for New Horizons based on his use of a firearm. Minor contends the probation officer's statement regarding consecutive commitments was therefore "weak" and "did not inspire confidence." Minor also contends the local programs "would honor the court's order regardless of when the minor turned 18."

The court heard opposing views regarding minor's eligibility for consecutive commitments to SAU and New Horizons from the probation officer and minor's counsel. The court ultimately concluded minor had needs that could not be met by consecutive local programs because "youth are under the age of 18 when they begin each of the programs." Minor does not dispute a consecutive commitment to SAU and New Horizons would have placed minor outside the age range served by such programs. In any event, however, the court found there were no local options comprehensive enough to meet minor's level of need and assist him "as he goes into adulthood." Substantial evidence supports this finding and demonstrates the inappropriateness of less restrictive alternatives.

Indulging all reasonable inferences supporting the court's decision, the record demonstrates that the DJJ placement would provide a probable benefit to minor and that less restrictive alternatives would be either inappropriate or ineffective. (See *In re Angela M.*, *supra*, 111 Cal.App.4th at p. 1396.) The juvenile court did not abuse its discretion.

## DISPOSITION

The juvenile court's commitment order is affirmed.