Filed 8/15/22  In re J.D. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B311194 (Super. Ct. No. KJ41098) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.D.,<br><br>    Defendant and Appellant. | |

J.D. appeals from the juvenile court's finding that he committed voluntary manslaughter and the dispositional order committing him to the Department of Juvenile Facilities (DJF) for two years.  (Pen. Code, § 192, subd. (a); Welf. & Inst. Code, § 602.)  He contends substantial evidence does not support the juvenile court's finding that he honestly, but unreasonably used

deadly force when he shot and killed his friend. He also contends the juvenile court abused its discretion when it committed him to DJF for two years. We affirm.

*Factual and Procedural History*

At about 9:30 p.m. in May 2014, appellant, then seventeen years old, was "hanging out" with friends in front of their house when he saw a person quickly approaching. The person was wearing a hoodie with his face partially covered and appeared to have his hand inside his waistband. As the person got close, appellant pulled out a gun and fired a single shot to the person's head. After the person fell to the ground, appellant rolled him over and pulled down the hoodie. He recognized the person as his friend, Adrian Gallegos. Appellant said, "Little Smiley [Gallegos]. Why did you do that?" Appellant and two other people drove Gallegos to the hospital. But he died the following day from the gunshot wound to his head.

At the contested hearing on the murder charge, witnesses testified that on the night of the shooting, they saw the person later identified as Gallegos, "creeping up" toward them and appeared to be holding a gun. The testimony was inconsistent whether Gallegos removed his hand from his pocket or extended his arm out as if pointing a gun. Two of the witnesses admitted they lied to police for a year about the shooting.

Another witness testified he was sitting in his car at the time of the shooting and saw Gallegos approach appellant. While testifying, the witness was visibly nervous. He explained he had to move out of state because he was scared that people would say he was a "snitch." The witness testified he did not recall telling police appellant took off his shirt, put the gun inside it, and tried to throw it in the witness's car, or that when he refused,

2

appellant called him a "bitch."  He did recall telling police that after the shooting, appellant told him, "nobody knows. . . .  If I hear that anybody knows, it's because of you."  When the prosecutor asked the witness who shot Gallegos, the witness said, "I believe I'm dead now."

The juvenile court found appellant committed voluntary manslaughter, as a lesser included offense of murder.  (Pen. Code, § 192, subd. (a).)  It also found appellant to be a person described by Welfare and Institution Code section 602 and ordered he be committed to DJF for two years.

*Sufficiency of the Evidence*

"'The same standard governs review of the sufficiency of the evidence in adult criminal cases and juvenile cases: we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt. [Citations.]'"  (*In re A.G.* (2020) 58 Cal.App.5th 647, 653; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320.)  Substantial evidence is that which is reasonable, credible, and of solid value. (*People v. Westerfield* (2019) 6 Cal.5th 632, 713 (*Westerfield*).)

"'We presume in support of the of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.'"  (*Westerfield*, *supra*, 6 Cal.5th at p. 713.)  We resolve neither credibility issues nor evidentiary conflicts.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

*Imperfect Self-Defense*

"'Self-defense, when based on a *reasonable* belief that killing is necessary to avert an imminent threat of death or great bodily injury, is a complete justification, and such a killing is not a crime.'" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 648.) If, however, the "belief subjectively exists but is objectively unreasonable, there is 'imperfect self-defense,' i.e., 'the defendant is deemed to have acted without malice and cannot be convicted of murder,' but can be convicted of manslaughter." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 (*Humphrey*).)

"To assess whether a belief was objectively reasonable," the fact finder "'must consider what "would appear to be necessary to a reasonable person in a similar situation and with similar knowledge."'" (*People v. Brady* (2018) 22 Cal.App.5th 1008, 1014 (*Brady*), quoting *Humphrey*, *supra*, 13 Cal.4th at pp. 1082-1083.) In so doing, it must assume ""'the point of view of a reasonable person in the position of [the] defendant,'"" considering ""'all the elements in the case which might be expected to operate on his mind.'"" (*Brady*, at p. 1014, quoting *Humphrey*, at p. 1083.)

This does not mean that the "objective inquiry adopts the standpoint of a reasonable person 'with [appellant's] background of trauma, abuse, mental illness, and physical limitations.'" (*Brady*, *supra*, 22 Cal.App.5th at pp. 1014-1015.) Rather, the inquiry is "'whether a person of ordinary and normal mental and physical capacity would have believed he was in imminent danger of bodily injury under the known circumstances.'" (*Id.* at p. 1015.)

Here, substantial evidence supports the juvenile court's conclusion that appellant actually, but unreasonably, believed he needed to use deadly force the night of the shooting. The juvenile

court stated that the overall evidence did support "some level" of appellant's "alertness to the situation" when Gallegos approached the area with his face covered and his hand in his waistband area. While the juvenile court believed appellant's motive was to defend himself, the evidence did not support a finding that his belief in the need for self-defense was "reasonable." The juvenile court opined, "there was no evidence [Gallegos] had a gun or was carrying a gun. He posed no actual threat." After considering the evidence, the juvenile court concluded, "I think that it would take more than what [appellant] saw for a reasonable belief."

Appellant contends this finding is error because the juvenile court did not consider evidence of a prior shooting in the area or appellant's perception of danger. He relies on *Humphrey, supra,* 13 Cal.4th 1073, *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, and *People v. Horn* (2021) 63 Cal.App.5th 672 stating that evidence bearing on the defendant's perception of danger is relevant to understanding his perspective and how a reasonable person would act under similar circumstances. (See *Humprey,* at p. 1083; *Sotelo-Urena,* at p. 752; *Horn,* at pp. 682-683.) But those cases are distinguishable and do not support a finding that appellant's shooting of Gallegos in this case was objectively reasonable.

We disagree with appellant's contention that the juvenile court did not consider evidence of the prior shooting or appellant's perception of danger. First, the juvenile court is presumed to have considered all relevant factors, even if it did not mention them all in its explanatory comments. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Second, the juvenile court expressly stated it had sat through the trial, reviewed the evidence, and found the "overall evidence" did not support a

5

finding that appellant's belief in the need for self-defense was objectively reasonable.

*DJF Commitment*

Appellant next contends the juvenile court abused its discretion in committing him to DJF instead of a less restrictive alternative. Appellant's contention is meritless.

In order for the juvenile court to commit a minor to DJF, there must be substantial evidence in the record demonstrating both a probable benefit to the minor by a DJF commitment and the inappropriateness or ineffectiveness of less restrictive alternatives. (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 6; *In re N.C.* (2019) 39 Cal.App.5th 81, 86.) This is because "[n]o ward of the juvenile court shall be committed to [DJF] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by [DJF]." (Welf. & Inst. Code, § 734.)

We review the juvenile court's commitment decision for abuse of discretion and indulge all reasonable inferences to support its decision. (*In re N.C., supra,* 39 Cal.App.5th at p. 85.) The juvenile court did not abuse its discretion. While appellant's prior record was minimal, and he did not commit a new offense after the shooting, the juvenile court did not believe the alternative disposition of time-served with supervision by probation for seven months was sufficient. Nor was there any evidence of "proposed programs" that appellant could participate in while on probation.

The juvenile court listed several programs identified in the probation report that appellant would be eligible for and would

benefit from while at DJF, including individual behavioral counseling to develop personal responsibility, accountability, and the tools to "avoid criminogenic behavior." Appellant could participate in "aggression interruption treatment and behavior treatment program interventions," which "provide youth with insight into alternative ways of thinking and behaving in order to avoid aggression and violence." Finally, appellant could obtain his high school diploma or G.E.D. and pursue vocational training.

Appellant contends that any benefit is "speculation," especially since the programs listed in the probation report are "vaguely-described" and do not specifically identify any individual problems they would address. But the probation department "is not required in its report . . . to provide indepth information about the DJF's programs . . . ." (*In re Carlos J.*, *supra*, 22 Cal.App.5th at pp. 12-13.) "[W]here the probation officer has identified programs of benefit to a minor and provided brief information about the most important programs, it may be presumed the probation officer's recommendation is based on an assessment the programs are available and appropriate." (*Id.* at p. 13.)

Appellant contends there is "concrete and substantial evidence" that he has "reformed himself" in the years since he shot and killed Gallegos. For example, he has not engaged in violent criminal or gang activity, has worked as a plumber and electrician, and by the time of the hearing, had a two-year-old daughter. However, the juvenile court found there was no "evidence of any counseling," or that appellant had participated in classes such as, "victim awareness," "substance abuse," or "any

sort of life skills education for avoiding this type of situation" in the future.[1]

This is particularly relevant given appellant's behavior after the shooting. For example, he tried to dispose of the gun by hiding it in a witness's vehicle. When the witness refused, appellant called him a "bitch" and threatened him. Appellant also did not call 911, which likely delayed immediate assistance for Gallegos at the hospital.

Consequently, the juvenile court could not say appellant did not pose any danger to the public or that such an incident would not recur. This was reasonable. While rehabilitation is one of the primary objectives of juvenile court law, so too is public safety. (*In re N.C., supra*, 39 Cal.App.5th at pp. 85-86.)

Appellant's final contention that DJF's impending closure "must affect" the programs and services is without merit. The juvenile court was well aware of the pending legislative changes to DJF, and after carefully weighing the alternative, determined appellant would benefit from the programs and services available at DJF that would otherwise not be available to him. There was no abuse of discretion.

*Disposition*

The judgment (findings and order) is affirmed.

---

[1] There was a five-year delay between the shooting and the filing of the dependency petition.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


PERREN, J.*


---

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Steven E. Ipson, Commissioner
Superior Court County of Los Angeles

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.