Filed 10/3/25  In re S.S. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.S., <br><br> Defendant and Appellant. | F089191 <br><br> (Super. Ct. No. 22JL-00055B) <br><br> **OPINION** |

### THE COURT\*

APPEAL from an order of the Superior Court of Merced County.  Stephanie L. Jamieson, Judge.

Allan E. Junker, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

_____

\*       Before Detjen, Acting P.J., Franson, J. and Snauffer, J.

-ooOoo-

The juvenile court sustained a petition alleging minor, S.S., committed escape (Pen. Code, § 4532, subd. (b)(1)).  Appointed counsel for minor asked this court to review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Minor was advised of his right to file a letter stating any grounds on appeal within 30 days of the date of filing of the opening brief.  Minor did not file a letter.  He has identified no basis for relief, nor have we.  We affirm.

## PROCEDURAL SUMMARY

On November 5, 2024, an amended juvenile wardship petition was filed in Merced County Superior Court, pursuant to Welfare & Institutions Code section 602,[1] alleging minor committed burglary (Pen. Code, § 459; count 1); vandalism over $400 (Pen. Code, § 594, subd. (a); count 2); grand theft of access card account information (Pen. Code, § 484e, subd. (d); count 3); escape (Pen. Code, § 4532, subd. (b)(1); count 4); and conspiracy to commit a crime (Pen. Code, § 182, subd. (a)(1); count 5).  Minor denied the allegations.

On November 21, 2024, the juvenile court held a jurisdictional hearing.  Minor waived his rights and admitted count 4.  The court dismissed the remaining counts pursuant to *In re Robert H.*[2]

On January 2, 2025, the juvenile court held a disposition hearing.  The court declared minor a ward of the court, placed under the general supervision of the probation officer, subject to the rules and regulations of the court, and committed minor to the Bear Creek Academy youth treatment program (YTP) for one year.

On January 13, 2025, minor filed a timely notice of appeal.

---

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]    *In re Robert H.* (2002) 96 Cal.App.4th 1317.

2.

## FACTUAL SUMMARY[3]

On September 20, 2024, minor broke into a fast food restaurant and took three customer credit cards from a safekeeping cabinet and $2 in change. The cost to repair the restaurant's glass door that he broke was $1,001.

On October 3, 2024, minor was in the recreation yard of the juvenile correctional center. He jumped over a gate and ran away. He was found shortly afterward crouching near a tree line outside the yard and was apprehended.

## DISCUSSION

### *Wende* **Review**

As noted above, minor's appellate counsel filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, asserting he could not identify any arguable issues in this case. After minor's appellate counsel filed his *Wende* brief, by letter dated September 14, 2024, we invited minor to inform this court of any issues he wished to address. Minor did not respond to our letter. Upon review of the record, we have identified no basis for relief.

The probation department's report recommended minor be committed to the YTP, listing the numerous previous incidents in which minor had been involved in and out of custody, and the seriousness of the underlying escape offense.

On December 26, 2024, the juvenile court held a disposition hearing and discussed whether to commit minor to the long term program (LTP) or the one-year YTP.

Defense counsel argued that a program that was less restrictive than the YTP, such as the LTP, was more appropriate for minor "based on his age" because "[h]e is still young." She argued that, aside from "a few incidents where there was violence that [minor] … used against other youth in the juvenile hall," "there's no indication that he's not otherwise [participating in] programming."

---

[3] The facts of the underlying offense are taken from the probation report.

3.

The prosecution argued that the underlying offense was not the only incident minor had been involved in, and that he showed "a clear pattern of violence, and particularly violence regarding in confinement since he's been—his escape involved at least attempted violence against the police officers, and the numerous incidents he's had at the [juvenile] hall … given his continued history of violence … I do believe a YTP seems appropriate. I recommend the [c]ourt go with that recommendation."

The probation officer confirmed to the juvenile court that minor was involved in an incident involving inappropriate sexual behavior and a fight, as well as numerous refusals by minor to participate in programming and counseling, while in custody since the commission of the underlying offense. She stated, "[Minor] would be able to receive services—intensive services in juvenile hall while being closely monitored by probation [in the YTP]. I understand similar services would be provided [in the LTP], but just given the seriousness of the escape charge, I think that's the reason why probation is leaning toward the YTP." She explained the YTP would offer additional rehabilitative services, work programs, and educational opportunities so minor could complete his education. She stated the LTP did not offer the same work program but that it would still allow him to complete his education. The YTP was one year in duration, while the LTP was approximately four months with a subsequent aftercare portion.

The juvenile court asked the probation officer if there were "any other services offered through YTP that are not offered through LTP that probation is hoping [minor] can benefit from? [The probation report] really doesn't get into this. It really doesn't justify YTP. So if I'm going to order YTP, I need probation to make a record that's not included in this report." It continued, "I need to know specifics about what it is that's going to be achieved with [minor] through the YTP … that simply cannot be achieved with the LTP … and with a more progressive form of discipline."

The probation officer was not prepared to answer the juvenile court's inquiry, so the court continued the disposition hearing.

4.

On January 2, 2025, at the continued disposition hearing, the juvenile court asked the probation officer, "Specifically, what [minor] will benefit from in the YTP that cannot be provided in the LTP."

The probation officer stated the LTP, YTP and secure track program "all have the same core program.… They're going to get the same education. They're going to get the same therapy, and they're going to get the same classes … such as anger management, coping skills, et cetera." She continued, "[T]he reason [YTP would be most beneficial for minor] is because it is a one year program, and it's going—it will give [minor] consistency and a foundation that he hasn't had over the past couple years. He has been … with a foster family …. And he's r[u]n away several times. [¶] He has not gone to school for the past two years. He is very low in credits. Almost to a ninth grade level, but he should be in eleventh grade." The officer stated minor's family was not able or willing to take custody for him, stating, "They want to see consistency. They want to see … his behavior change.… [T]hey want more time to reunify with [minor] than four months [that it would be for the LTP]." She stated,

> "So [probation] took all that into consideration when we decided that the YTP … would be a great program for [minor]. [H]e'll be able to catch up on his credits. He'll … be in a controlled environment where he can't run away. He … needs to work on individual and also family therapy. He has not received any of those because he's not stayed in placement long enough.
>
> "And with the YTP …, [minor] can also not only build up his credit in school, he can also participate in job skills such as the forklift program, the food handling program, which he could … participate in the coffee cart, and also the solar program.
>
> "And once [minor] completes … the YTP …, he will have to look for an additional … placement, but we're hoping that with this time period, … we'll be able [to] reunify him with one of his family members.… [I]nstead of back into a foster home.
>
> "But he needs this core … foundation, and he just has not had it.… [A]nd we think that, … with this year long [YTP], he can be successful."

5.

The probation officer stated minor had been involved in another fight since the hearing the prior week.

The juvenile court stated, "[N]ow that I have the additional information regarding probation's reasoning and I no longer have the impression that this is a punitive solution, I am inclined to agree that YTP is the appropriate program, keeping in mind that I'm familiar with the programs that are offered."

The juvenile court noted that after the completion of the four-month LTP, minor would be placed in either a group home or foster care. Referring to defense counsel's request that minor be placed in the LTP, from which he would subsequently be placed in aftercare in a group home, it stated, "So a group home that doesn't have the career services, that doesn't have the programming, that doesn't have the coffee cart, solar program, welding programs. That doesn't have all of that [that YTP has]. That doesn't have the structure."

The juvenile court committed minor to the YTP for one year, stating, "The fact that the YTP … offers the career programming, that's really the most important thing.… [T]hose career services are really what are going to provide [minor] the motivation to seek his schooling, to stay with the structured program, and hopefully see that his future is a lot brighter than the examples he's been given up until now. Those career programs that are offered here at the [juvenile] hall are exceptional. And the support that they provide, in addition to the career services and training, is exceptional, even after a minor has left the [juvenile] hall and left the secure nature of the YTP."

Section 202 provides:

> "Minors under the jurisdiction of the juvenile court … as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (§ 202, subd. (b).)

6.

In deciding a minor's placement, " 'the juvenile court [has] maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' " (*In re James R.* (2007) 153 Cal.App.4th 413, 432; *In re Carlos J.* (2018) 22 Cal.App.5th 1, 7.) Dispositional orders must conform with the purposes of juvenile delinquency laws, which are "twofold:  (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public ….' " (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614.)  To accomplish these purposes, the court "has statutory authority to order delinquent wards to receive 'care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.' " (*Id.* at p. 615; see § 202, subds. (a), (b), & (d).)

When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)  It must "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.*, *supra*, 96 Cal.App.4th at p. 1329.)

A disposition hearing record should reflect evidence that the proposed means of rehabilitation will result in probable benefit to the minor, and that the goals of the juvenile law could not have been met by a less restrictive placement.  (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 906; *In re Michael D.* (1987) 188 Cal.App.3d 1392.)  "After finding that a minor is a [ward of the court], the court shall hear evidence on the question of the proper disposition to be made of the minor.  The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim[.]  …  In any judgment and order of disposition, the court shall state that the

7.

social study made by the probation officer has been read and that the social study and any statement has been considered by the court." (§ 706.)

The record shows the juvenile court heard evidence on the question of the proper disposition to be made of minor, received in evidence other relevant and material evidence and read and considered the probation report, as required by section 706. The record also shows that the court considered minor's age, previous delinquent history, and the circumstances and gravity of his offenses, as required by section 725.5, when it determined that minor's commitment to the YTP will result in a probable benefit to minor, as the goals of rehabilitation of minor and protection of the public were not met by less restrictive placements in the LTP.

Accordingly, after a thorough review of the record, we agree with minor's appellate counsel there are no arguable issues in this case.

## **DISPOSITION**

The juvenile court's findings and order are affirmed.